## NETHERTON *et al. v.* NETHERTON.

1. On the trial of an issue as to whether the execution of a certain instrument in writing had been procured by fraud, the plaintiff alleging that she thought the instrument was a will when in fact it was a deed, that because of defective eyesight she could not read it, and that she did not have her reading glasses with her, and testifying that she could scarcely read with the glasses which she had at the time of affixing her signature to the instrument, and that she was seventy-five years of age, and just recovering from an attack of illness, it was not error for the court to charge the jury that "she further alleges and contends that she could not read, because of her extreme old age, and because of her physical infirmities, and because of the fact that she had not yet fully recovered from sickness, and because of the fact that she had left her reading glasses at her home in Unadilla."

2. Nor in such trial was it error for the court to charge the jury as follows: "I charge you that fraud will authorize a court of equity to annul conveyances, however executed, and to relieve against awards, judgments, decrees, or deeds, obtained thereby or by imposition." While so much of this charge as relates to the setting aside of awards, judgments, and decrees was mere surplusage, the statement of the rule in full was not harmful to the defendant.

3. Under the evidence in the case the court did not err in charging the jury upon the subject of confidential relations, and upon the subject of fraud actual and constructive; the charge being substantially as contained in the code sections relating to these subjects.

4. The evidence authorized the verdict.

JULY 14, 1914.

Cancellation of deed. Before Judge George. Dooly superior court. August 5, 1913.

Mrs. Sarah Netherton brought her petition against George B. Netherton and his wife, Sallie R. Netherton. She alleged, that after a spell of sickness, and before she had entirely recovered from the

effects thereof, she received a message from Mrs. Sallie R. Netherton notifying her to come from Unadilla, Georgia, where she lived, to Macon, Georgia, where the defendants were then residing; that thinking the defendants desired her to make them a visit, she went to the city of Macon to the home of the defendants, and on the day after her arrival the defendants stated to petitioner that they desired her to make a will. George B. Netherton is the stepson of petitioner, and his wife her niece. In company with George B. Netherton and his wife the plaintiff went to the office of an attorney, for the purpose of having her will drawn. When the will was drawn she was requested by the two defendants to sign the same, which she did, as she thought. When she had signed her name to the will and was arising from the table the attorney who drew the will presented another paper and asked her to sign that. She inquired as to the nature of this paper, and the attorney told her, in the presence of the defendants, that it was a part of the will. Relying on this statement, being 75 years old, infirm and in bad health, she signed the paper, believing it to be a part of the will. Recently she discovered that the paper so signed, which she believed to be a part of the will, was a deed giving to Mrs. Sallie R. Netherton a certain house and lot in the town of Unadilla, Georgia. She charges that the execution of the deed was procured by fraud and misstatement on the part of the attorney and the defendants, and that the deed was without consideration; and she prays that the same be brought into court and canceled. The deed was attached as an exhibit to the petition. By amendment she alleged, that on leaving home she had left her reading glasses there; that at the time of the execution of the instrument which she sought to have canceled the defendants knew that she did not have her reading glasses and that she could not read without them; and that she reposed confidence in Mrs. Sallie Netherton, her niece, and in her stepson, George Netherton, not to misrepresent the facts.

The defendants filed their plea and answer, denying all allegations of fraud, and averring that the deed was freely and voluntarily executed and delivered. The plaintiff testified: She was about 76 years old. Sallie Netherton was her niece, and George Netherton was her stepson. Her niece had lived with her off and on for 15 or 20 years, commencing to stay with her when she was 15 years old, and stayed with her off and on until she was married.

George Netherton was 22 or 23 years old when plaintiff was married to his father, and lived with her for about five years. During the time the two defendants lived with her she had no children of her own, and they took the place of her children; she treated them as her children and loved them as such. She received a message from George Netherton, asking her to visit him in Macon. She had been sick and was sick at that time with grippe. Upon reaching Macon she went to the home of the defendants. That evening George said to her that he and his wife wanted her to make a will. She asked, "What for?" George Netherton said, "She wants it written by a lawyer." Plaintiff had previously to this time executed a will. She replied, "Well, if I do, it will be made just like the other one that I made six years ago. I will make it just like that, and let a lawyer sign it." The next morning they went down town, the two defendants, their daughter-in-law, and plaintiff, and when they arrived at the office George said, "We have got that will wrote," and plaintiff replied, "All right; if it is right I will sign it, and if it ain't I won't." They went into the office of the attorney, and "the lawyer come and sat down by me and read the will to me; it was in print, and I didn't understand it exactly like I wanted to, and I asked him to read it the second time, and he read it, treated me mighty nice, read it loud so that I could understand it; and he says, 'We will have to go in this next room and sign it,' and I sat down at the table and looked over it and saw that it was a will, and signed it, and went to get up, and the lawyer says, 'Stop, Mrs. Netherton, there is more of it,' and I says, 'Are you certain of that?' and George says, 'Ma, that is all right,' and I says, 'Is that a will, you are certain it is a will?' and he says, 'Yes,' and George says to me, 'It is all right.' They wanted me to sign twice,—that the law required it, two signatures to the will. Both papers that I signed looked just alike to me. I just thought that he had turned over the leaf on the other side. I didn't have any reading glasses with me, and I didn't take the paper and read it carefully. I looked over it and read it carefully, I looked over it, and he has read it to me. Without my reading glasses I could just make out to read, could read a little bit with the glasses I had, couldn't read enough to read the entire instrument. I just looked over it enough to see that it was a will. I couldn't read it because my glasses wouldn't let me read it. In the room where the will

was read there wasn't such a good light; there was a better light in that room than there was in the room where it was signed. I made out to put my name to it, takes their word that it was a will, had confidence in George and thought he wouldn't fool me, and confidence in Sallie." The plaintiff further testified that if she had known the instrument was a deed she would not have signed it, and that only recently she had discovered that it was a deed; and gave other testimony tending to show her confidence in the defendants; misrepresentations as to the character of the instrument signed, upon the part of the attorney who drafted the same, made in the presence of the defendants; and that they did not correct these misstatements or give her true information as to the character of that instrument. The defendants in the case both testified in rebuttal of all the statements of the plaintiff tending to show acts of positive fraud, and denied also the testimony as to misrepresentations made by the attorney who drafted the instrument in question; and the attorney himself denied all acts amounting to fraud. Both the defendants and the attorney and another witness gave testimony showing that the plaintiff knew the contents of the instrument that she signed, and that no deception had been practiced. The jury returned a verdict in favor of the plaintiff, and a decree was entered thereon that the deed be set aside and canceled. The defendants made a motion for a new trial, which was overruled, and to this judgment the movants excepted.

*Crum & Jones,* for plaintiffs in error.

*Watts Powell, D. L. Henderson,* and *B. R. Collins,* contra.

BECK, J. (After stating the foregoing facts.)

1, 2. The rulings made in headnotes 1 and 2 require no elaboration.

3, 4. Under the evidence of the plaintiff the jury were authorized to find that the defendants, or at least one of them, George B. Netherton, stood in a confidential relationship to the plaintiff. He was her stepson; he had lived in the house with her for several years when his father was in life; she had loved him as a son. According to his own testimony, he enjoyed her fullest confidence: He testified, "I had been looking after her business for her, signed her bank checks, and looked after her collections for her, signed, collected her rents, and made investments; and there was no suspicion; she always said what George done was right, her business

was attended to without any expense in the world to her." And there was testimony tending to show that she had looked upon him as a son and treated him as a trusted child; that she desired to have him and his wife come and live with her again in her extreme old age. Under this evidence the court did not err in charging the jury in reference to the subject of confidential relations, as contained in section 4627 of the Civil Code, which reads as follows: "Any relations shall be deemed confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith; such as partners, principal and agent," etc. While so much of that section as relates to confidential relations arising from contracts, or created by law, and the relations of partners, principals, agents, etc., was surplusage and should have been omitted, the mere inclusion of these irrelevant parts of the law in regard to confidential relations could scarcely have been harmful to the defendants. Nor, under the evidence, was it error to charge the law substantially as contained in section 4622 of the Civil Code, relative to actual and constructive fraud.

There was no merit in the other criticisms upon the charge. Some verbal inaccuracies, it is true, are pointed out; but the court in a clear and lucid manner instructed the jury as to the real issues in the case; and there being evidence to authorize the verdict, the judgment refusing a new trial is affirmed.

*Judgment affirmed. All the Justices concur.*